## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LANCE OLDRIDGE,

       *Plaintiff,*

  vs.                                                                                  Case No. 6:21-cv-1284-EFM-KGG

CITY OF WICHITA, KANSAS;
ROBERT LAYTON;
GORDON RAMSAY;
WANDA GIVENS;
JOSE SALCIDO; and
ANNA HATTER,

       *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for Summary Judgment on each of Plaintiff Lance Oldridge's claims. Plaintiff has asserted claims for violations of the First and Fourteenth Amendments under 42 U.S.C. § 1983 against all six Defendants and claims under Title VII and the Kansas Act Against Discrimination ("KAAD") against the City of Wichita. Each claim revolves around Plaintiff's termination from the Wichita Police Department following statements he made to Sedgwick County District Attorney Marc Bennett and Sheriff Jeffrey Easter regarding Chief Gordon Ramsay's alleged perjury. The individual Defendants have asserted qualified immunity as a defense to Plaintiff's First Amendment claims, arguing that (1) there was no

violation of Plaintiff's constitutional rights and (2) there was no law clearly establishing that their actions violated a constitutional right.   In a perplexing move, Defendants have limited their arguments regarding Plaintiff's Title VII, KAAD, and Equal Protection claims to contending that Plaintiff has failed to state claims under Federal Rule of Civil Procedure Rule 12(b)(6) instead of arguing under a summary judgment standard.   Therefore, notwithstanding the title of Defendants' Motion, the Court considers their Motion to be solely a motion to dismiss under Rule 12(b)(6) for all claims except Plaintiff's First Amendment Claims.   For the reasons set forth below, the Court grants Defendants' Motion in part and denies it in part.

## I.   Factual and Procedural Background

Defendants argue against Plaintiff's First Amendment retaliation claim under Rule 56's summary judgment standard.   In contrast, Defendants posture their arguments regarding Plaintiff's remaining claims under Rule 12(b)(6)'s standard—i.e., failure to state a claim—instead.   With that in mind, the facts upon which the Court relies to resolve Plaintiff's First Amendment claim are those undisputed by the parties and supported by proper citations to the record.     Regarding Plaintiff's Title VII, KAAD, and Equal Protection claims, the facts are taken from Plaintiff's Complaint and considered true for the purposes of this Order.

## A.   Uncontroverted facts relevant to Defendants' argument under a summary judgment standard

Plaintiff worked for the Wichita Police Department ("WPD") from 1993 to April 2020, serving as a detective for over 20 years of that time.   Plaintiff was assigned to the Professional Standards Bureau ("PSB") from 2013 to October 2016.   In 2014, while Plaintiff was still on the PSB, he sent an email elucidating his concerns in light of the recent Ebola outbreak about a trip by the Wichita City Council to Africa.   Defendants do not address whether this email had anything to

do with Plaintiff's eventual termination.  In 2016, Plaintiff raised his voice to his supervisor and secretly recorded their meeting resulting in his removal from the PSB and reassignment to the WPD police academy.

In 2019, the Wichita Eagle published an article titled "Wichita Chief Concerned About Police Shooting Investigations."  The article quoted from a deposition Chief Gordon Ramsay had given in another case where Ramsay revealed his concerns in 2015 and 2016 that PSB officers had asked leading questions and potentially contaminated ongoing criminal investigations.  Although not explicitly mentioned by the article, Ramsay specifically mentioned his concern with Plaintiff's leading questions, conflicts, and biased investigations in that same deposition.  Furthermore, Ramsay testified that he had responded by reassigning several officers, impliedly including Plaintiff.

In response to the article, Ramsay issued a public statement wherein he claimed that the officers he had reassigned in 2016, including Plaintiff, "committed no legal or WPD internal violations."  It was this statement that sparked the current fire before this Court.

On July 24, 2019, Plaintiff delivered a packet of materials to Sedgwick County District Attorney Marc Bennett (the "DA").  This packet contained various materials relating to Ramsay's deposition, the Wichita Eagle article, and Ramsay's public statement.  It also included a copy of K.S.A. § 21-6103, which criminalizes false communications in certain circumstances.  With the packet, Plaintiff sent a cover letter asserting that Ramsay gave false testimony under oath, as evidenced by the alleged discrepancy between the deposition and Ramsay's public statement that no officers had violated any internal WPD policies.  He requested that the DA investigate Ramsay's allegedly criminal conduct, adding that he was willing to sign a criminal complaint against Ramsay.  After receiving a follow-up email from Plaintiff regarding Ramsay's alleged

crimes, the DA responded via email, opining that Ramsay had not committed any crime. According to the DA, Ramsay had merely set forth his opinions in both the deposition and the public statement.

Apparently unsatisfied with this response, Plaintiff contacted Sheriff Jeffrey Easter to request that the Sheriff's Office investigate Ramsay's alleged perjury.  At that time, Plaintiff informed the Sheriff that the DA had chosen not to investigate Plaintiff's allegations.  The Sheriff contacted the DA regarding Plaintiff's allegations.  The DA responded, once again stating that in his opinion Ramsay had not committed any crime.  In agreement with the DA, the Sheriff informed Plaintiff that Ramsay had not committed perjury and there would be no forthcoming investigation. The Sheriff also contacted Ramsay to inform him of Plaintiff's allegations.

After learning of Plaintiff's statements to the DA and the Sheriff, Ramsay contacted Deputy Chief Jose Salcido to inform him of the same.  Salcido, Deputy Chief Anna Hatter, and Deputy Chief Wanda Givens met with the DA to discuss Plaintiff's allegations, eventually deciding that Salcido and Givens would request a PSB investigation into Plaintiff based on his statements to both the DA and the Sheriff.[1]  Ramsay acquiesced to their request as soon as he received it.

On December 6, 2019, Plaintiff received a notice of the investigation listing the sole reason for the investigation as Plaintiff's alleged failure to inform the Sheriff of his prior communications

---

[1] Although Hatter's testimony at the arbitration hearing stated that she was only concerned with Plaintiff's statement to the Sheriff, the Court is not required to accept as true a defendant's self-serving testimony proffered in support of its motion for summary judgment. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached*, at least to the extent that that evidence comes from disinterested witnesses*.") (emphasis added).  Regardless, this is irrelevant to the outcome of this case as Defendants do not argue this point.

with the DA.  Plaintiff immediately informed Givens that this was false, to no avail.  Upon initiating the investigation, Givens suspended Plaintiff with pay until it concluded.  Givens also confined Plaintiff to his residence during the workweek, which differed from past practice only requiring suspended employees to be available via phone during work hours.  The evidence suggests that the investigation lasted over three months, with Plaintiff's suspension lasting over four months.

On December 9, 2019, Plaintiff provided documents to the PSB showing that he had told the Sheriff of his prior conversations with the DA.  That same day, Plaintiff filed a complaint about Givens and Ramsay for retaliation and providing false testimony respectively.  In response, Givens filed a complaint against Plaintiff for racial discrimination.

Despite the basis for the investigation swiftly being proven false, the investigation did not cease—rather, it was amended on December 16, 2019, to add a general allegation that Plaintiff had engaged in conduct to discredit the WPD without regard to his obligations as an officer.  On March 30, 2020, Hatter recommended termination of Plaintiff in a memo to City Manager Brandon Layton.  In the memo, Hatter extensively discussed Plaintiff's statements to the DA and the Sheriff but stated that the reason for termination was Plaintiff's derogatory and debasing statements about Ramsay to his coworkers, untruthfulness, and breach of a prior confidentiality agreement.  Layton approved Plaintiff's termination on April 19, 2020.

Plaintiff filed a grievance because of his termination, resulting in a four-day arbitration hearing.  Ultimately, the arbitrator found that Plaintiff had violated WPD policies, but termination was unjustified in this context.  Rather, the arbitrator recommended reinstatement with a lesser penalty.  Layton clearly disagreed, as he rejected the arbitrator's recommendation and sustained Plaintiff's termination.  A state court upheld Layton's decision under the highly deferential agency

review standard, finding that it was supported by substantial evidence and neither arbitrary nor capricious.

Plaintiff thereafter filed a complaint against Defendants in federal court, alleging claims under the First and Fourteenth Amendments, Title VII, and the Kansas Act Against Discrimination ("KAAD"). Even though discovery has yet to commence, Defendants have now moved for summary judgment on all of Plaintiff's claims, although as previously noted, the Court considers Defendants' Motion only as a motion to dismiss for all claims except Plaintiff's First Amendment claim.

**B.    Facts taken from Plaintiff's Complaint relevant to Defendants' argument under a motion to dismiss standard**

In 2018, Plaintiff's wife, Sarah Oldridge, sent an email to the WPD at large, nominally asking what the WPD did to eliminate bias from an anonymous survey used by the WPD in its promotion procedures. This email was written in response to the WPD passing over Sarah, who was fully qualified, for promotion in favor of an African American male. Furthermore, that man was qualified only because he had provided false information on his application. Thereafter, the City generated a new application to make the man's answer to the previous application true under the new form. The man received no other penalty.

On another occasion, Hatter signed a letter stating that WPD sergeant Kris Henderson, who was also African American, had knowingly lied to PSB during an internal investigation. Hatter believed this at the time. Within hours of signing the letter, Hatter claimed she changed her mind and that Henderson had not lied. Hatter never provided any explanation for this abrupt change. Henderson received no penalty and was soon promoted to Lieutenant.

Furthermore, a Hispanic officer set up fake email accounts to book tee times for fictional golfers at public golf courses around Wichita in order to play through the course faster. Even though such conduct was dishonest, the City failed to give the officer any penalty for dishonesty. Instead, it gave him a low-level penalty for "poor judgment."

Finally, Givens held a racially segregated meeting in 2020, inviting exclusively African American officers to attend. After someone complained to City Council, they reached out to Ramsay, who in turn asked Givens about it. Givens then filed a PSB report, thereby initiating an investigation where the PSB conducted extensive email searches to find out who had notified City Council of the meeting.

## II.    Legal Standard

### A.    Summary judgment

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[5] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[5] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

conclusory allegations alone cannot survive a motion for summary judgment.[6]  The court views

all evidence and reasonable inferences in the light most favorable to the non-moving party.[7]

## B.    Motion to dismiss

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the

plaintiff has failed to state a claim upon which relief can be granted.[8]  Upon such motion, the court

must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible

on its face.' "[9]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to

reasonably infer that the defendant is liable for the alleged misconduct.[10]  The plausibility standard

reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature

of claims as well the grounds on which each claim rests.[11]  Under Rule 12(b)(6), the court must

accept as true all factual allegations in the complaint, but need not afford such a presumption to

legal conclusions.[12]  Viewing the alleged facts "in the light most favorable to the nonmoving

party,"[13] the court must decide whether the plaintiff's allegations give rise to more than speculative

possibilities.[14]  If the allegations in the complaint are "so general that they encompass a wide swath

---

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[8] Fed. R. Civ. P. 12(b)(6).

[9] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[11] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[12] *Iqbal*, 556 U.S. at 678–79.

[13] *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir.1999).

[14] *See Iqbal*, 556 U.S. at 678–79 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' " [15]

### III.   Analysis

**A.   Plaintiff's First Amendment claim**

Plaintiff asserts claims against all Defendants for violations of the First Amendment. Section 1983 provides "that every person who acts under color of state law to deprive another of constitutional rights shall be liable in a suit for damages."[16]  Under the First Amendment, persons have the right to "freedom of speech" and "to petition the Government for a redress of grievances."[17]  In broad terms, government employers violate the First Amendment if their response to protected speech "would dissuade a reasonable person from exercising First Amendment rights."[18]

The individual Defendants, however, have asserted qualified immunity as an affirmative defense.  Qualified immunity prevents plaintiffs from recovering "damages against a government official in his personal capacity" unless plaintiff meets a heightened burden.[19]  Specifically, the burden is on the plaintiff "to show: (1) that the defendant's actions violated a federal constitutional

---

[15] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[16] *Bird v. W. Valley City*, 832 F.3d 1188, 1207 (10th Cir. 2016) (brackets omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (summarizing 42 U.S.C. § 1983) ("[M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies.").

[17] U.S. Const. amend. I.

[18] *Hoke v. Swender*, 421 F. Supp. 3d 1164, 1171 (D. Kan. 2019) (citing *Lincoln v. Maketa*, 880 F.3d 533, 540 (10th Cir. 2018)).

[19] *Lane v. Franks*, 573 U.S. 228, 243 (2014).

or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[20]   The Court is free to address these prongs in any order.[21]

1.     *There are genuine issues of material fact as to whether Defendants violated Plaintiff's First Amendment rights*

Generally, to prevail on a First Amendment retaliation claim, a "plaintiff must show that (a) he or she was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."[22]   Government employees alleging retaliation by their employer, however, must meet a higher burden than a normal person to show their speech is protected.[23]   This is because "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services."[24]

Accordingly, the Supreme Court crafted a test to balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[25] The *Garcetti/Pickering* test, as it is known by the Tenth Circuit, substitutes its own elements that a plaintiff must meet to show First Amendment retaliation by a government employer, namely:

---

[20] *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (further citation and quotations omitted).

[21] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[22] *Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2007).

[23] *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

[24] *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

[25] *Pickering*, 391 U.S. at 568.

(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.[26]

When analyzing each of these elements, the Court must address "the first three steps" as "questions of law for the courts, and the last two [as] questions of fact."[27]  Failure to meet even one of these elements results in dismissal of the plaintiff's claim.[28]

Defendants fail to point to a lack of evidence supporting Plaintiff's allegations that steps one, four, and five have been met in this case.[29]  Instead, Defendants solely argue elements two and three; whether Plaintiff's speech was on a matter of public concern and whether the WPD's interest in promoting its own efficiency outweighed Plaintiff's free speech interest in this case.

      a.     Plaintiff's speech was on a matter of public concern.

"Speech is on a matter of public concern if it involves a matter of interest to the community."[30]  "Speech involves a public concern when the speaker intends to bring to light actual

---

[26] *Helget v. City of Hays*, 844 F.3d 1216, 1221 (10th Cir. 2017) (further citations and quotations omitted).

[27] *Id.*

[28] *See id.* at 1222 ("Because Helget's claims can be resolved at the third step of the *Garcetti/Pickering* test, we confine our review to that step.").

[29] The parties dispute who bears the burden on step five.  The Tenth Circuit has unequivocally held that under the *Garcetti/Pickering* analysis at summary judgment "the burden remains with the defendant" to prove that the plaintiff would have been terminated anyway. *Roberts v. Winder*, 16 F.4th 1367, 1383 (10th Cir. 2021).  In their initial Motion, Defendants make no effort to carry its burden on this issue or steps one and four, thereby waiving any arguments they may otherwise have.

[30] *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1367 (10th Cir. 2015).

or potential wrongdoing or breach of public trust by a public official or to disclose any evidence of corruption, impropriety, or other malfeasance within a governmental entity."[31]

"Generally, the pursuit of criminal charges or allegations of serious misconduct are matters of public interest and concern."[32]   Furthermore, the Tenth Circuit has held in *Meyer* that the plaintiff's "attempt to report an *alleged* criminal offense was conduct protected by the First Amendment."[33]   "In contrast, speech regarding 'internal personnel disputes' ordinarily will not involve a public concern."[34]   Courts must "consider the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest."[35]

Here, the evidence shows that Plaintiff attempted to report that the City's chief of police had committed perjury.  This entails a matter of public concern, as Plaintiff clearly alleged impropriety and malfeasance by a high-ranking public official.  Of course, Plaintiff may have been motivated at least in part by his personal connection with Ramsay's statements.  However, Plaintiff has consistently characterized his purpose in sharing Ramsay's statements as disclosing government wrongdoing, not airing personal disputes.  Defendants cite to no evidence to the

---

[31] *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1228 (10th Cir. 2014) (brackets and internal quotation marks omitted).

[32] *Johnson v. Unified Sch. Dist. 507, Haskell Cnty.*, 580 F. Supp. 3d 999, 1009 (D. Kan. 2022); *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1331 (10th Cir. 2007) ("As we have held many times, speech reporting the illicit or improper activities of a government entity or its agents is obviously a matter of great public import."); *Meyer v. Board of County Com'rs*, 482 F.3d 1232, 1243, n.5 (10th Cir. 2007) ("We thus conclude that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition the government for the redress of grievances.") (further citation and quotations omitted).

[33] *Meyer*, 482 F.3d at 1243; *see also Eisenhour*, 744 F.3d at 1228 (considering protected speech to include reports of "actual or *potential* wrongdoing" by public official) (emphasis added) (quotations and citation omitted).

[34] *Hawkins v. Bd. of Cnty. Commissioners of Coffey Cnty.*, 376 F. Supp. 3d 1200, 1213 (D. Kan. 2019) (quoting *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988)).

[35] *Id.* (further quotations omitted).

contrary.  This characterization is further supported by his speech being made to the DA and the Sheriff instead of private parties.  Drawing all reasonable inferences in Plaintiff's favor requires the Court to find that Plaintiff's speech was motivated to disclose misconduct.  Furthermore, Defendants cite to no case requiring the report of an actual, proven crime before a plaintiff's statement is on a matter of public concern.[36]  As Plaintiff points out, Defendants could have argued as an affirmative defense that Plaintiff's statements were reckless or deliberately false.[37]  They did not.  As the matter stands before the Court, Plaintiff's statements to the DA and the Sheriff were on a matter of public concern.  Therefore, this element does not support Defendants' Motion.

Finally, Plaintiff alleges that his termination was also made in response to his 2014 email regarding his concern about the possibility of an Ebola outbreak after the City Council's visit to Africa.  Defendants do not address this part of Plaintiff's claim at all.  Therefore, the Court assumes that Defendants do not move for summary judgment regarding Plaintiff's First Amendment claim based on his 2014 email.

   b. Plaintiff's interest in free speech outweighs Defendants (lack of) interest in efficiency

The third element of a First Amendment retaliation claim under *Garcetti*/*Pickering* requires the Court to consider whether the WPD's interest in promoting its efficiency outweighed Plaintiff's free speech interests.  The main inquiry of this element is "whether the government had 'an adequate justification for treating the employee differently from any other member of the public'

---

[36] *Cf. Walter v. Morton*, 33 F.3d 1240, 1243 (10th Cir. 1994) ("Mr. Walter claims he was retaliated against for reporting his investigation of criminal conduct of the Chief of Police. Mr. Walter's statements of *perceived* illegal activities are matter of concern for the community.") (emphasis added).

[37] *See Gertz v. Robert Welsh, Inc.*, 418 U.S. 323, 341 (1974)

based on the government's needs as an employer."[38]  Here, "[t]he only public employer interest that outweighs the employee's free speech interest is avoiding direct disruption, by the speech itself, of the public employer's internal operations and employment relationships."[39]  Courts may consider multiple factors in this analysis, including whether the statement: "[1] impairs discipline by superiors or harmony among coworkers, [2] has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or [3] impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."[40]  The Tenth Circuit has "long recognized that loyalty and confidence among employees is especially important in a law enforcement setting."[41]

Public employers, however, "need not show that the employee's speech *in fact* disrupted internal operations and employment relationships."[42]  The public employer only must show "that the speech could *potentially*" disrupt the employer's operations, thereby outweighing the employee's free speech interest.[43]  In making this showing, the public employer must nevertheless support its "reasonable prediction of disruption . . . by specific evidence."[44]  The government's interest will be given little to no weight when "there is no evidence that [a plaintiff's speech]

---

[38] *Lane*, 573 U.S. at 237 (quoting *Garcetti*, 547 U.S. at 418).

[39] *Helget*, 844 F.3d at 1222 (further citations and quotations omitted).

[40] *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

[41] *Helget*, 844 F.3d at 1222.

[42] *Id.* (emphasis in original).

[43] *Id.* (emphasis in original) (further citation and quotations omitted).

[44] *Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1279 (10th Cir. 2007) (further citations and quotations omitted).

interfered with the efficient functioning of the office" nor "any danger that [the plaintiff] had discredited the office by making the statement in public."[45]

Here, Defendants have failed to perform any sort of factual analysis whatsoever in support of their naked assertion that Plaintiff's statements to the DA and the Sheriff would disrupt efficiency in the WPD. Furthermore, Plaintiff's statements were made privately to the DA and the Sheriff. Defendants' lack of evidence and factual analysis implies that the WPD suffered no efficiency loss due to Plaintiff's statements. Therefore, the Court gives no weight to the WPD's interest in efficiency as there is no evidence of how Plaintiff's statements to the DA and Sheriff disrupted or would disrupt that efficiency.

The Court gives at least some weight to Plaintiff's speech to the DA and Sheriff. As concluded above, Plaintiff's statements that the Wichita chief of police committed perjury involved matters of public concern, regardless of the validity or believability of those statements. This alone entitles Plaintiff's interest in his speech to *some* weight regardless of whether Ramsay actually committed any wrongdoing.[46] Since something is greater than nothing, Plaintiff interest in his freedom of speech outweighs Defendants' interest—or lack thereof, rather—in efficiency. Because Plaintiff has shown that there are genuine issues of material fact as to each of the *Garcetti/Pickering* elements, the Court holds that a reasonable jury could find that Plaintiff's First Amendment rights were violated by his termination.

---

[45] *Rankin*, 483 U.S. at 389.

[46] *See, e.g.*, *Lytle v. City of Haysville*, 138 F.3d 857, 866 (10th Cir. 1998) ("[A] government employee's interest in whistleblowing is entitled to *little weight* if a reasonable person in his shoes would not have believed that there was government corruption or wrongdoing.") (emphasis added).

    2.    *Because Plaintiff asserts First Amendment claims against each Defendant, the Court must determine whether each Defendant individually violated Plaintiff's First Amendment rights under* Garcetti/Pickering

    Clearly stated under a normal First Amendment claim, yet only implied under the *Garcetti/Pickering* elements, is whether the defendant at issue *caused* a government employee's First Amendment rights to be violated.  In the present case, Plaintiff has brought his § 1983 First Amendment retaliation claims against five individuals and one municipality.  While similar, the standards for proving causation differ slightly between the Defendants.

    First, an individual government official who "subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights" is liable under § 1983.  The "causes to be subjected" test requires plaintiff to prove that the individual defendant "set in motion a series of events that defendants knew or reasonably should have known would cause others to deprive the plaintiff of his constitutional rights."[47]  Borrowing causation principles from the realm of tort liability,[48] "[d]efendants are liable for the harm proximately caused by their conduct."[49]  "In other words, they may be held liable if the further unlawful [conduct] would not have occurred but for their conduct and if there were no unforeseeable intervening acts superseding their liability."[50]  Concurrent causation by others "does not change the outcome."[51]  Although "[c]ausation is

---

[47] *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006) (further citation, quotations, and brackets omitted).

[48] *See Monroe v. Pape*, 365 U.S. 167, 187 (1961) *overruled in part on other grounds by Monell* 436 U.S. 658 ("Section [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.").

[49] *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012).

[50] *Id.*

[51] *Lippoldt v. Cole*, 468 F.3d 1204, 1220 (10th Cir. 2006).

generally a question of fact for the jury[,] . . . whether the plaintiff has presented sufficient evidence of causation to defeat a motion for summary judgment is a legal question."[52]

### a.   Hatter and Layton

Defendants allege that as to all Defendants—except Hatter and Layton—Plaintiff cannot show causation as to Plaintiff's adverse employment action, but concede that Hatter recommended Plaintiff's termination and Layton approved it, even over the contrary recommendation of the arbitrator.   While Defendants argue briefly for the first time in their Reply that Hatter recommended Plaintiff for termination and Layton terminated Plaintiff for reasons other than Plaintiff's protected speech, the Court is not required to give any heed to arguments raised for the first time in a reply.[53]   Regardless, this argument is more properly addressed under steps four and five of the *Garcetti/Pickering* analysis—i.e., whether Plaintiff would have been fired even without having made the statements to the DA and the Sheriff.   As stated earlier, Defendants failed to address steps four and five in their initial Motion, waiving any argument as to the true reasons for Plaintiff's discharge.   Because a genuine issue of material fact exists as to the reasons for Plaintiff's discharge, a reasonable jury could find that Hatter and Layton violated Plaintiff's First Amendment rights by causing his termination.

---

[52] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 778 (10th Cir. 2013).

[53] *See Klima Well Serv., Inc. v. Hurley*, 133 F. Supp. 3d 1297, 1302 n.2 (D. Kan. 2015) ("Arguments raised for the first time in a reply brief are waived and will not be considered.").

b.      Givens and Salcido

Defendants' main contention is that Givens and Salcido did not terminate Plaintiff or recommend him for termination—therefore, they did not cause Plaintiff to suffer any adverse employment action.[54]

The parties do not dispute that Givens was the one to request the investigation. Defendants nowhere argue that Plaintiff would have been terminated anyway even if the investigation—instigated directly in response to Plaintiff's statements to the DA and Sheriff—had never occurred. Conversely, Plaintiff has cited facts showing Givens' refusal to terminate the investigation even after the alleged basis, Plaintiff's failure to inform the Sheriff of his previous communications with the DA, had been proven false. Therefore, Plaintiff has established a genuine dispute of material fact as to whether Givens set in motion a series of events that Givens knew would lead to Plaintiff's termination. Defendants make no contrary argument. Therefore, a reasonable jury could find that Givens proximately caused Plaintiff's rights to be violated under § 1983.

The same arguments apply to Salcido. Salcido requested investigation of Plaintiff because of his protected speech to the DA and Sheriff. This itself does not constitute a clearly established adverse employment action under the First Amendment. Even though Salcido did not directly terminate Plaintiff nor suspend him, it was foreseeable that the investigation would lead to more serious consequences which could constitute violations of Plaintiff's First Amendment rights.

---

[54] Defendants make no argument about whether the investigation and suspension constituted adverse employment actions. Although the issue remains open as to whether these actions violated Plaintiff's First Amendment rights, the Court finds—as discussed in more detail below—that these do not constitute *clearly established* adverse employment actions. Qualified immunity, accordingly, prevents these Plaintiff from recovering against the individual Defendants for the investigation and suspension. Therefore, the Court need not address whether they in fact violated Plaintiff's constitutional rights in the first place. *See Pearson*, 555 U.S. at 241 (holding that courts may address qualified immunity prongs in any order under the "general rule of constitutional avoidance") (further citations and quotations omitted).

Therefore, a reasonable jury could find that Salcido proximately caused a violation of Plaintiff's constitutional rights.[55]

   c. Ramsay

Plaintiff argues that Ramsay is also liable for retaliation under a supervisor liability theory. Much like the liability standard for municipalities, supervisors cannot be held liable under a *respondeat superior* theory but only "for their own culpable involvement in the violation of a person's constitutional rights."[56]  Thus:

> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates.[57]

Here, showing "mere negligence" on the part of the supervisor is not enough.[58]  Rather, the supervisor must have "acted knowingly or with deliberate indifference that a constitutional violation would occur."[59]  This requires showing "a deliberate, intentional act by the supervisor to violate constitutional rights."[60]

Plaintiff's theory here is that Ramsay, by "yielding" to Givens and Salcido's request to begin the investigation, acquiesced to the foreseeable violations of Plaintiff's constitutional rights. Furthermore, Plaintiff argues that the evidence shows that it was Ramsay who informed Givens,

---

[55] Whether Givens' and Salcido's actions violated clearly established rights is discussed below under the clearly established prong of qualified immunity.

[56] *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).

[57] *Id.*

[58] *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997).

[59] *Dodds v. Richardson*, 614 F.3d 1185, 1196 (10th Cir. 2010) (further citation and quotations omitted).

[60] *Id.* (further citation and quotations omitted).

Salcido, and Hatter of Plaintiff's speech, thereby backhandedly initiating the investigation.  It is undisputed that Ramsay was Givens and Salcido's supervisor.  Because their conduct under the facts before this Court can be reasonably found to have caused a violation of Plaintiff's constitutional rights, Ramsay's yielding to their request could result in supervisor liability *only if* Ramsay had a culpable state of mind.

Obviously, Plaintiff cannot be expected to have direct evidence of Ramsay's state of mind because discovery has yet to take place.  Nevertheless, Plaintiff presents no other evidence of Ramsay's state of mind, nor does he aver as to what evidence of such he might hope to find through discovery.  Of course, the evidence that Ramsay on his own initiative informed the Deputy Chiefs of Plaintiff's comments shows that he intended some consequence to come about.  Intending some consequence to Plaintiff for his speech without directing what it would entail is not sufficient to show a deliberate, intentional act on the part of Ramsay.  Therefore, Plaintiff has failed to meet his burden of showing that a genuine issue of material fact exists as to whether Ramsay caused his clearly established rights to be violated.  Accordingly, the Court grants summary judgment as to Plaintiff's First Amendment claim against Ramsay.

d.      The City

In addition to the individual defendants, Plaintiff has asserted a First Amendment retaliation claim against the City of Wichita.  Local governments "cannot be held liable under § 1983 solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." [61]  Rather, the plaintiff must show that "the unconstitutional actions of an employee were representative of an official policy or custom of the

---

[61] *Bird*, 832 F.3d at 1207 (further citation and quotations omitted).

municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action."[62]

Defendants do not dispute that Layton, as City Manager, had final policymaking authority when it came to disciplining Plaintiff for his protected speech.  Therefore, the City may be held liable for Layton's termination of Plaintiff in response to Plaintiff's protected speech.  Naturally, the City is the only Defendant unable to assert qualified immunity.  Therefore, the City may also be liable for the adverse employment actions Plaintiff suffered in the form of the lengthy investigation and suspension with house confinement.  By failing to argue that the investigation and suspension with pay do not constitute adverse employment actions, Defendants have waived those argument for the purposes this Order.  Defendants do not argue nor point to an absence of evidence in the record that the City had an official policy or custom of retaliating against persons who spoke out against Ramsay or the WPD, as Plaintiff alleges.  Therefore, Defendants essentially admit that the City had a custom of retaliating against persons speaking ill of Ramsay and that the City retaliated against Plaintiff pursuant to that custom.  Accordingly, the Court denies summary judgment on Plaintiff's First Amendment retaliation claim against the City.

3.      *Only Defendants' termination of Plaintiff in response to his protected speech violates a clearly established constitutional right.*

"A right is clearly established when every reasonable official would understand that what he is doing violates that right."[63]  "To be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.' "[64]  More specifically, clearly established

---

[62] *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

[63] *Lincoln*, 880 F.3d at 537 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (further citation, quotations, and brackets omitted).

[64] *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

rights "cannot be defined at a high level of generality; instead, the key is whether the specific conduct has been clearly established as a constitutional violation."[65]  "In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[66]

The Tenth Circuit's decision in *Walter v. Morton*[67] recognized that discharge of a government employee because he "reported criminal activities of the Chief of Police" violates a clearly established constitutional right.[68]  In *Walter*, a policer officer, believing that his Chief of Police had committed a crime, reported the alleged crime to the District Attorney's office and the Oklahoma State Bureau of Investigation.[69]  The plaintiff was subsequently discharged from the police force.[70]  The Tenth Circuit held "[i]f [plaintiff] was discharged in retaliation to his report, this would constitute a violation of a clearly established constitutional right."[71]  Under this binding precedent, Defendants' termination of Plaintiff in response to his statements to the DA and the Sheriff about Ramsay's alleged perjury violated a clearly established constitutional right.[72]

---

[65] *Lincoln*, 880 F.3d at 537.

[66] *Gutierrez*, 841 F.3d at 900 (further citation and quotations omitted).

[67] 33 F.3d 1240 (10th Cir. 1994).

[68] *Id.* at 1243.

[69] *Id.* at 1241.

[70] *Id.*

[71] *Id.* at 1243.

[72] *Cf. Finley* 2018 WL 3472816, at *9 (D. Kan. 2018) ("The Court concludes that *Walter* establishes the necessary precedent to satisfy the 'clearly established' prong.  As in *Walter*, this case involves a police officer reporting a high-ranking law enforcement official's suspected illegal activity, and a subsequent discharge allegedly resulting from that report.  To the extent differences exist between this case and *Walter*, such differences are immaterial and do not change the result.  Indeed, a case need not be directly on point if the 'conduct is obviously unlawful in light of existing precedent.' ") (quoting *Lincoln*, 880 F.3d at 537 (further citation and quotations omitted)).

Even so, Plaintiff has failed to meet his burden to show that the investigation and suspension with pay constitute "clearly established" adverse employment actions under Supreme Court or Tenth Circuit precedent or the clear weight of other circuits.[73]   Of course, the scope of what constitutes retaliatory conduct is broader under the First Amendment than Title VII.[74] Indeed, the Tenth Circuit has rejected the argument "that only adverse employment decisions, such as termination, suspension, or transfer, in retaliation for constitutionally protected conduct are illegal."[75]   However, the Tenth Circuit itself has held that precedent as to whether "placement on paid administrative leave [constitutes] a clearly established adverse employment action" does not exist.[76]  Plaintiff fails to cite to any caselaw holding to the contrary.

Plaintiff makes a persuasive argument comparing Title VII "adverse employment actions" to the present case, claiming that the First Amendment's laxer standard must naturally include Defendants' investigation and suspension, along with the unprecedented home confinement. However, Plaintiff's burden is more taxing than merely being persuasive—he must show that the fact that Defendants' actions constituted adverse employment actions is beyond debate.  This he has failed to do.  Indeed, Plaintiff's argument is just that; an argument which would require this Court to analyze the unique facts of this case and find in favor of Plaintiff.  This is not the same as

---

[73] *See Lincoln*, 880 F.3d 533, 541–42 (10th Cir. 2018) (addressing whether law has clearly established "paid administrative leave" as an adverse employment action for the purpose of First Amendment retaliation claims).

[74] *See Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005) ("Although we have never delineated what actions constitute 'adverse employment actions' in the First Amendment context, we have repeatedly concluded that a public employer can violate an employee's First Amendment rights by subjecting an employee to repercussions that would not be actionable under Title VII.").

[75] *Morfin v. Albuquerque Pub. Sch.*, 906 F.2d 1434, 1437 n.3 (10th Cir. 1990).

[76] *Lincoln*, 880 F.3d at 542.

showing that the law was clearly established so that Defendants knew the investigation and suspension with house confinement would violate Plaintiff's constitutional rights.

Therefore, to the extent Plaintiff's First Amendment claims rely on the investigation and suspension, the individual Defendants are entitled to qualified immunity.  Notably, the only adverse employment actions taken by Givens and Salcido were the investigation and suspension. While an issue of fact as to whether it was reasonably foreseeable that these actions would lead to a violation of Plaintiff's clearly established rights, qualified immunity requires a plaintiff to prove more than a reasonably foreseeable constitutional violation—rather, the plaintiff must prove that "every reasonable official would have understood that *what he is doing* violates that [clearly established] right."[77]    Accordingly, Givens and Salcido did not violate Plaintiff's clearly established constitutional rights.  Therefore, they are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

In sum, only Plaintiff's First Amendment retaliation claims against Hatter, Layton, and the City remain.  Plaintiff has failed to show under a qualified immunity analysis that Givens, Salcido, and Ramsay violated a clearly established constitutional right.  Therefore, Defendants' Motion is granted as to Plaintiff's First Amendment claims against these individuals.

---

[77] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (further citation, quotations, and brackets omitted) (emphasis added).

**B.      Title VII and KAAD claims**

Plaintiff has also asserted claims under Title VII and the KAAD against the City.[78]  Kansas "[c]ourts analyze KAAD discrimination claims using the same analysis governing federal Title VII."[79]  The Court will address these claims together.

Plaintiff alleges two separate claims under Title VII: disparate treatment due to his race and retaliation because of his wife's 2018 email.  It is worth noting the complete lack of legal briefing on this issue by Defendants.  In their initial Motion, Defendants' entire argument is that Plaintiff failed to meet *Twombly*'s and *Iqbal*'s pleading standards based on their reading of only four sentences out of the entirety of Plaintiff's Complaint.  Defendants appear to have forgotten that they chose to bring a motion for summary judgment at this point, not a motion to dismiss.  As Defendants solely argue under a Rule 12(b)(6) standard for Plaintiff's Title VII claims, the Court will construe Defendants' Motion as a motion to dismiss regarding those claims.

Furthermore, "[a]rguments raised for the first time in a reply brief are waived and will not be considered."[80]  Therefore, the Court will not consider Defendants' arguments raised for the first time in their Reply—which are their only substantive arguments regarding this issue.

*1.      Disparate treatment*

The Court finds that under Rule 12(b)(6), the standard argued by Defendants, Plaintiff's claim for disparate treatment is plausibly alleged.  Under Rule 12(b)(6), the court must decide

---

[78] Naturally, because "Title VII imposes no liability on individuals, the doctrine of qualified immunity is irrelevant to plaintiff's Title VII claims." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 255 (2d Cir. 2014) (further citations and quotations omitted).

[79] *Mitchem v. Sleepcair, Inc.*, 2021 WL 4439406, at *5 (D. Kan. 2021) (citing *Singh v. Cordle*, 936 F.3d 1022, 1037, 1042 (10th Cir. 2019)).

[80] *Hurley*, 133 F. Supp. 3d at 1302 n.2.

"whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[81]  When ruling on a motion to dismiss, there is no requirement as to where in the complaint plaintiffs must allege the facts supporting their claim because courts must "consider the complaint as a whole."[82]

To establish a prima facie case of discrimination, a plaintiff must show that "the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination."[83]  The plaintiff's burden at this stage is "not onerous."[84]  The plaintiff may rely on either direct allegations of intentional discrimination or the familiar *McDonnell Douglas Corp. v. Green*[85] analysis.  Under *McDonnell Douglas*, a plaintiff must show "that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class."[86]  Once the plaintiff alleges sufficient facts in support of each element, the court presumes discrimination.[87]

The Tenth Circuit liberally construes the phrase "adverse employment action" in determining what conduct constitutes the same.[88]  Although termination and suspension without

---

[81] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[82] *Lander v. Summit Cnty. Sch. Dist.*, 109 F. App'x 215, 217 (10th Cir. 2004).

[83] *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (further citations and quotations omitted).

[84] *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

[85] 411 U.S. 792 (1973).

[86] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[87] *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir.1992).

[88] *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998).

pay almost always count as adverse employment actions,[89] "[s]uch actions are not simply limited to monetary losses in the form of wages or benefits."[90]  Rather, they include practically all actions except "those acts that merely have a *de minimis* impact upon an employee's future job opportunities."[91]  Courts must "take a case-by-case approach" to determine what constitutes an adverse employment action.[92]  For example, this Court in *Owens v. Unified Government of Wyandotte County/Kansas City*[93] held that a genuine issue of material fact existed as to whether an "unnecessary and extensive investigation" qualified as an adverse employment action, even if the investigation may have been "reasonably commenced."[94]

However, "the presumptions in Title VII analysis that are valid when the plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group."[95]  Therefore, a "plaintiff who pursues a reverse discrimination claim, and seeks to obtain the benefit of the *McDonnell Douglas* presumption, must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."[96]  Of course, a plaintiff is not limited to the *McDonnell Douglas* analysis to prevail on a reverse discrimination claim.   The plaintiff remains free to allege "by direct evidence of discrimination or by indirect

---

[89] *See, e.g., Kester v. Shawnee Mission Unified Sch. Dist. No. 512*, 2005 WL 4708214, at *13 (D. Kan. 2005) (noting there was no dilemma as to whether termination and suspension constituted adverse employment actions).

[90] *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004).

[91] *Id.* at 1033.

[92] *Id.*

[93] 2022 WL 2131117 (D. Kan. 2022).

[94] *Id.* at *8.

[95] *Livingston v. Roadway Exp., Inc.*, 802 F.2d 1250, 1252 (10th Cir. 1986); *see also Notari*, 971 F.2d at 589 (defining such circumstances as a "reverse discrimination" claim).

[96] *Notari*, 971 F.2d at 589.

evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for plaintiff's race" he would not have suffered the adverse employment action.[97]

Nowhere in his Complaint does Plaintiff allege direct evidence of reverse racial discrimination by any of the Defendants.  Therefore, Plaintiff must rely upon the McDonnell Douglas analysis to allow the Court to presume discrimination.  Since Plaintiff is Caucasian, which is undisputedly a historically favored group, he must allege sufficient background circumstances for the Court to infer, at least at this stage, that WPD discriminates against the majority.  To make this showing, Plaintiff alleges that the WPD via Givens hosted a racially segregated meeting excluding non-African Americans.  Plaintiff also alleges several instances where members of racial minorities received little to no repercussions for dishonesty, impropriety, and misconduct from Hatter.  Viewing this evidence in the light most favorable to Plaintiff, sufficient background circumstances for this Court to infer that the WPD is the rare employer who discriminates against the majority.  Accordingly, Plaintiff's membership in a historically favored ethnic group is not fatal to his case for purposes of this Motion.

Under the second element, Plaintiff alleges that he suffered three adverse employment actions: an unnecessary and extensive investigation, suspension with pay along with an unprecedented home confinement during that period, and termination.  Defendants makes no argument as to whether these each of these actions constitutes an adverse employment action for

---

[97] *Id.* at 590 (further quotations and citation omitted).

the purpose of Title VII.  Therefore, Defendants have waived any arguments as to this issue for the purposes of this Motion.[98]

Regarding the third element, there is no dispute that Plaintiff was qualified for his position.

Finally, Plaintiff has alleged that members of racial minorities who engaged in dishonest conduct, the basis for the initial investigation of and following suspension of Plaintiff, received little to no penalty for such conduct.  As alleged, this constitutes disparate treatment.  Therefore, under *McDonnell Douglas*, the Court must presume discrimination in this case.  Accordingly, Defendants' Motion is denied regarding Plaintiff's disparate treatment claim under Title VII.

### 2.     Retaliation

In discussing Plaintiff's retaliation claim, both sides appear to be competing for who can give the shortest and least persuasive argument in favor of their position.  Defendants win—just barely—by not even addressing this claim except to make a bare-faced statement that Plaintiff's Complaint did not allege plausibly any violations of Title VII.  Even so, Defendants are right.

Title VII also protects employees who have "opposed any practice made an unlawful employment practice by [Title VII]" by outlawing retaliation against those employees by the employer.[99]  A prima facie retaliation case under Title VII requires the plaintiff to allege: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have

---

[98] *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with legal authority or argument.") (further citation and quotations omitted).  To be sure, caselaw from the District of Kansas suggests that (at least short) suspensions with pay need not constitute adverse employment actions.  *See, e.g.*, *Ross v. Pentair Flow Techs., Inc.*, 2021 WL 4134317, at *9 (D. Kan. 2021) (holding three-day suspension with pay did not constitute adverse employment action).  However, Defendants make no argument concerning the pled adverse employment actions in this case, thereby relieving the Court of the necessity of performing a factual analysis as to whether the months-long suspension here with the accompanying house confinement amounts to an adverse employment action.

[99] *See Khalik*, 671 F.3d at 1192 (quoting 42 U.S.C. § 2000e–3(a)).

found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[100]  "Protected activity for the purposes of Title VII retaliation includes either (1) participating in or initiating a Title VII proceeding or (2) opposing discrimination made unlawful by Title VII ."[101]  The Supreme Court has held, however, that a plaintiff need not show that he personally engaged in protected activity if "a close family member" has done so when both the plaintiff and the family member work of the same employer.[102]

The only "protected activity" under Title VII that Plaintiff alleges is his wife's 2018 email regarding promotion procedures at the WPD.  This Court has already held that these emails did not constitute protected activity.[103]  Without sufficiently alleging that he or a close family member engaged in protected activity by opposing unlawful discrimination, Plaintiff's Title VII retaliation claim must fail as a matter of law.  Therefore, Defendant's Motion is granted as to this claim.

## C.    Equal Protection

Once again, Defendants claim that Plaintiff failed to meet the requisite pleading standards under Rule 12(b)(6) without performing.  So, once again, the Court will analyze Plaintiff's claim under a Rule 12(b)(6) standard, assuming as true all allegations in Plaintiff's Complaint.  Based on Plaintiff's own factual arguments, Plaintiff has indeed failed to state a cognizable claim for violation of his Equal Protection rights.

---

[100] *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir.2011) (alteration omitted).

[101] *Boese v. Fort Hays State Univ.*, 814 F.Supp.2d 1138, 1146 (D.Kan.2011).

[102] *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174–75 (2011).

[103] *See Oldridge v. City of Wichita*, 2022 WL 1471369, at *9 (D. Kan. 2022) ("The court finds that these emails do not constitute protected activity as they cannot be read to complain about unlawful discrimination in violation of Title VII.").

"In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII."[104]   Therefore, allegations of direct discrimination suffice or "the *McDonnell Douglas* framework can also be used to prove intentional discrimination under § 1983" with Equal Protection claims.[105]   Unlike Plaintiff's Title VII claims, which were only asserted against the City, Plaintiff has brought his Equal Protection claims under § 1983 against each Defendant individually.

Defendants rightly point out that the organization of Plaintiff's Complaint leaves it unclear which specific facts Plaintiff relies upon to show that Defendants have violated his Equal Protection rights.   In his Response, Plaintiff clearly states that the *only* basis for his Equal Protection claim is that Givens retaliated against Plaintiff because of his wife's 2018 email. Although unclear, it appears that Plaintiff means to allege retaliation under the Equal Protection clause, not discrimination.   Tenth Circuit law is clearly established that "a theory of liability for retaliatory conduct does not come within § 1983."[106]   Therefore, Plaintiff's Equal Protections claims, based on retaliatory conduct as Plaintiff argues, must be dismissed.

To summarize, Plaintiff has failed to allege claims for retaliation under Title VII and the KAAD as well as any Equal Protection claim.   However, Plaintiff has sufficiently pled his claim for disparate treatment under Title VII.   Furthermore, because a reasonable jury could find in favor

---

[104] *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting *Baca*, 398 F.3d at 1218 n.3); *see also Notari*, 971 F.2d at 587) ("We emphasize that the basis of a § 1983 claim may be independent of Title VII even if the claims arise from the same factual allegations and even if the conduct alleged in the § 1983 claim also violates Title VII. For example, a § 1983 claim of racial discrimination is independent of a statutory disparate treatment claim arising out of the same set of facts because the § 1983 claim is substantively grounded in the Equal Protection Clause of the Fourteenth Amendment, whereas the disparate treatment claim flows from Title VII.").

[105] *Bird*, 832 F.3d at 1208.

[106] *See Maldonado v. City of Altus*, 433 F.3d 1294 (10th Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (further citation, quotations, and brackets omitted).

of Plaintiff regarding his First Amendment retaliation claim against Hatter, Layton, and the City, the Court denies Defendants' Motion as to those Defendants while granting it in regard to Ramsay, Givens, and Salcido.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 31) is **GRANTED in part** and **DENIED in part.**

**IT IS SO ORDERED.**

Dated this 30thth day of November, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE