**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LANCE OLDRIDGE,

        *Plaintiff,*

  vs.                             Case No. 6:21-cv-1284-EFM-KGG

CITY OF WICHITA, KANSAS;
ROBERT LAYTON;
GORDON RAMSAY;
WANDA GIVENS;
JOSE SALCIDO; and
ANNA HATTER,

        *Defendants.*

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff Lance Oldridge's Motion for Reconsideration (Doc. 80) regarding this Court's order (Doc. 78) granting in part and denying in part Defendants' motion for summary judgment. Specifically, Plaintiff requests that the Court reconsider its order dismissing Defendants Givens, Ramsay, and Salcido based on qualified immunity as well as the Court's dismissal of Plaintiff's Title VII retaliation claim. For the reasons set forth below, the Court grants Plaintiff's Motion in part and denies it in part.

## I.        Factual and Procedural Background

The facts underlying Plaintiff's suit are set out in the Court's original order—there is no need to repeat them here.  There, the Court addressed the rather scattered and inconsistent motion for summary judgment/motion to dismiss[1] submitted by Defendants.  Within that order, the Court granted Defendants' motion for summary judgment as to Plaintiff's First Amendment retaliation claim against Givens, Salcido, and Ramsay based on qualified immunity.  The Court also dismissed Plaintiff's Title VII claim for failure to state a claim based on Plaintiff's characterization of his claim within the body of his response.

The Defendants who had been denied qualified immunity appealed that decision to the Tenth Circuit.  Around the same time, Plaintiff filed the present Motion, causing the Tenth Circuit to abate the appeal until the Court ruled on the Motion.   In this Motion, Plaintiff seeks reconsideration of the issues described above.

## II.       Legal Standard

The Court has discretion regarding whether to grant a motion to reconsider.[2]  The Federal Rules of Civil Procedure do not formally recognize a "motion to reconsider."[3]  Instead, a post-judgment motion to reconsider "may arise under either Rule 59(e) (motion to alter or amend the judgment) or Rule 60(b) (relief from judgment for mistake or other reason)," although the rules

---

[1] As discussed in the Court's original order, Defendant's motion—entitled a motion for summary judgment—only argued that standard regarding Plaintiff's First Amendment retaliation claim.  For the others, including Plaintiff's Title VII retaliation claim, Defendant argued for dismissal under a Rule 12(b)(6) standard.

[2] *See Torgerson v. LCC Int'l, Inc.*, 227 F. Supp. 3d 1224, 1227 (D. Kan. 2017) (citing *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988)).

[3] *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

are not interchangeable.[4]   A motion for reconsideration under Rule 59(e) "gives the court an opportunity to correct manifest errors of law or fact and to review newly discovered evidence."[5] The court should alter or amend its judgment where the court has misapprehended the facts, the parties' positions, or the controlling law.[6]   Local Rule 7.3 further restricts this requirement, requiring motions to reconsider to be based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice."[7]   "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed."[8]   Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally.[9]

## III.     Analysis

### A.     The Court clearly erred by dismissing Plaintiff's Title VII retaliation claim.

Plaintiff first requests reconsideration of the Court's dismissal of his claim for Title VII retaliation.[10]   He argues that the Court in dismissing this claim failed to consider other protected

---

[4] *Jennings v. Rivers*, 394 F.3d 850, 854 (10th Cir. 2005) (citation omitted) (internal quotation marks and alterations omitted).

[5] *Voelkel v. General Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994) (citing *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir.1992)).

[6] *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (internal quotation marks omitted) (citation omitted).

[7] D. Kan. Local R. 7.3.

[8] *Voelkel*, 846 F. Supp. at 1483.

[9] *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

[10] In his Reply, Plaintiff states that Defendant did not even move to dismiss his Title VII retaliation claim. The Court considers this a failing argument for two reasons.  First, Plaintiff's Complaint did not specify whether he asserted claims for retaliation under Title VII—he merely alleged that Defendants had violated that statute.  Defendant properly addressed this claim in their original motion for summary judgment.  It was not until Plaintiff's response to that motion that it became clear he was also alleging Title VII retaliation.  At that point, Defendants addressed that

activity engaged in by Plaintiff's wife that formed the basis for the City's retaliatory termination—specifically Sarah Oldridge's EEOC charge, KHRC charge, and lawsuit against the City.  Pointing to the facts alleged in the Complaint as well as brief mentions of these events on pages 15, 19, and 41 of his initial response, Plaintiff claims the Court committed clear error in dismissing this claim. In response, Defendants point out that Plaintiff only mentioned the EEOC charge and lawsuit briefly in the facts section and once in the body of his argument regarding Plaintiff's First Amendment claim.  Plaintiff blames this failure to specifically emphasize Sarah's charge and lawsuit within the context of the Title VII argument on Defendant's cursory briefing in moving to dismiss this claim.

Title VII protects employees who have "opposed any practice made an unlawful employment practice by [Title VII]" by outlawing retaliation against those employees by the employer.[11]  A prima facie retaliation case under Title VII requires the plaintiff to show: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[12]  "Protected activity for the purposes of Title VII retaliation includes either (1) participating in or initiating a Title VII proceeding or (2) opposing discrimination made unlawful by Title VII ."[13]  The Supreme Court has held, however, that a plaintiff need not show that he personally engaged in protected activity if "a close family

---

newly specified claim in their reply.  Second, the Court "does not consider arguments raised for the first time in a reply brief."  *H&C Animal Health, LLC v. Ceva Animal Health, LLC*, 499 F. Supp. 3d 920, 935 (D. Kan. 2020).

[11] *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting 42 U.S.C. § 2000e–3(a)).

[12] *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (alteration omitted).

[13] *Boese v. Fort Hays State Univ.*, 814 F. Supp. 2d 1138, 1146 (D. Kan. 2011).

member" has done so when both the plaintiff and the family member work for the same employer.[14]

Defendants do not dispute the second element of Plaintiff's Title VII retaliation claim— only the first and third are at issue.  As to the first, Plaintiff argues that his wife engaged in protected activity by filing both charges and a lawsuit against Defendants alleging violation of Title VII.  However, it is beyond dispute that Plaintiff wholly omitted any reference to Sarah's EEOC charge and lawsuit in responding to Defendant's argument regarding his Title VII retaliation claim.  He had ample opportunity and good reason to do so at that time.  Instead, Plaintiff merely mentioned Sarah's email, omitting any reference to her EEOC charge or prior lawsuit.  Nevertheless, the Court noted in its original order its displeasure with Defendant's cursory briefing as to this claim.  Defendant's entire bare bones argument was that Plaintiff had failed to allege facts supporting a Title VII retaliation claim.  The Court agreed, given that Plaintiff referenced solely Sarah's email in responding to Defendant's argument.

However, even if Plaintiff failed to mention the EEOC charge and lawsuit in the section of his response dealing with his Title VII retaliation claim, he explicitly references them elsewhere.  Normally, the Court would be disinclined to go exploring to address a defendant's argument in support of dismissal.  But the breadth of Defendants' argument, necessitating a view of Plaintiff's Complaint as a whole, means the Court should have done so in this case.  Likewise, in evaluating a motion to dismiss—the standard argued by Defendants—the question is "whether the complaint

---

[14] *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174–75, 179 (2011) (J. Ginsburg, concurring) ("Such retaliation 'can be challenged,' the Manual affirms, 'by both the individual who engaged in protected activity and the relative, where both are employees.' ") (quoting EEOC Compliance Manual § 8–II(B)(3)(c)); see also McKinney v. Kansas City Auto. Co. Ltd. P'ship, 2018 WL 1199652, at *4 (D. Kan. 2018) (citing *Thompson* to hold that a plaintiff seeking to recover under Title VII must show that "he or his spouse engaged in protected opposition to discrimination.").

contains 'enough facts to state a claim to relief that is plausible on its face.' "[15]   In that regard, the Court clearly erred by failing to address Sarah's EEOC charge and ensuing lawsuit as protected activity alleged within Plaintiff's Complaint.[16]

In responding to the present Motion, Defendants argue that any error in omitting the EEOC charge, KHRC charge, and lawsuit was harmless because the alleged facts fail to show a causal connection between this protected activity and Plaintiff's termination.   Defendants point to the dates the charges and lawsuit were filed, noting that the last instance of protected activity, Sarah's filing the KHRC charge, occurred on March 18, 2019.  The investigation into Plaintiff began on December 6, 2019, with his termination following on April 19, 2022.[17]  Defendant points out that the shortest time between any protected activity and retaliatory act is still nearly nine months.

The Tenth Circuit has held that a period of three months between the last instance of protected activity and the first retaliatory act is insufficient by itself to establish causation.[18] However, "the passage of time does not necessarily bar a plaintiff's retaliation claim if *additional evidence* establishes the retaliatory motive."[19]   In other words, "temporal remoteness is not necessarily dispositive."[20]

Here, Plaintiff alleges that Lieutenant Blake Mumma specifically referred to Sarah's lawsuit against the City in his investigative report regarding Plaintiff—the same investigation and

---

[15] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[16] Defendants do not dispute that as alleged these acts constituted protected activity.

[17] Defendants do not contend that these actions fail to constitute retaliatory acts for the purposes of this Order.

[18] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

[19] *Piercy v. Maketa*, 480 F.3d 1192, 1198–99 (10th Cir. 2007) (emphasis in original).

[20] *Id.* at 1199.

report that led to Plaintiff's termination.  The fact that Defendants were clearly aware of and relying upon Sarah's lawsuit in investigating Plaintiff constitutes additional allegations of Defendant's retaliatory motive in response to Sarah's lawsuit.  Accordingly, the lack of temporal proximity between the alleged protected acts and the adverse employment actions is not dispositive of Plaintiff's case.  As such, Plaintiff has plausibly pleaded a Title VII retaliation claim.  Plaintiff's Motion, therefore, is granted on this point and his Title VII retaliation claim is reinstated.

**B.     The Court clearly erred by dismissing Givens and Salcido on the grounds of qualified immunity.**

Plaintiff also finds fault with this Court's analysis of his First Amendment claims against Givens and Salcido.  He argues that the Court clearly erred by reaching two conclusions.  First, Plaintiff argues that the Court erred by finding that Tenth Circuit has not "clearly established" that a retaliatory bad faith investigation violates a public employee's free speech rights.  Second, he considers this Court's judgment in error because it found "clearly established" and "reasonably foreseeable" to be incompatible.

*1.     Investigation as its own adverse employment action*

Plaintiff first disputes the Court's holding that it is not clearly established that a workplace investigation violates an employee's constitutional rights.  "A right is clearly established when every reasonable official would understand that what he is doing violates that right."[21]  "To be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.' "[22]  More specifically, clearly established rights "cannot be defined at a high level

---

[21] *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (further citation, quotations, and brackets omitted).

[22] *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

of generality; instead, the key is whether the specific conduct has been clearly established as a constitutional violation."[23]  "In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[24]

Plaintiff's entire argument that the investigation here violated a clearly established constitutional right centers on one Tenth Circuit case, *Worrell v. Henry*.[25]  There, the Tenth Circuit addressed a situation where a state employer had withdrawn an offer of employment, leading the plaintiff to bring claims for unconstitutional retaliation.[26]  When setting forth the relevant law, the court quoted *Lackey v. Cnty. of Bernalillo*,[27] stating: "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, *bad faith investigation*, and legal harassment, constitutes an infringement of that freedom."[28]  Plaintiff relies on this vague dictum to support its assertion that Givens and Salcido violated clearly established constitutional rights by initiating the internal investigation into Plaintiff.

In contrast, Defendants rely on the Tenth Circuit's holding in *Lincoln v. Maketa*[29] that "[a] workplace investigation generally does not constitute an adverse employment action."[30]  The court went on to hold that not even the *criminal* investigation at issue violated the plaintiff's clearly

---

[23] *Lincoln*, 880 F.3d at 537.

[24] *Gutierrez*, 841 F.3d at 900 (further citation and quotations omitted).

[25] 219 F.3d 1197 (10th Cir. 2000).

[26] *Id.* at 1202–03.

[27] 166 F.3d 1221 (table), 1999 WL 2461 (10th Cir. 1999).

[28] *Worrell*, 219 F.3d at 1212 (quoting *Lackey*, 1999 WL 2461, at *3) (emphasis added).

[29] 880 F.3d 533 (10th Cir. 2018).

[30] *Id.* at 540 (citing *Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cty.*, 587 F.3d 1223, 1243 (10th Cir. 2009).

established constitutional rights.[31]  Unlike a previous case where the filing of criminal charges and a criminal trial caused "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects,"[32] a simple criminal investigation presented none of these risks.[33]

Not only is *Lincoln* more specific than *Worrell*, dealing with an actual investigation, it is also more recent.  Accordingly, the Court did not err by applying the standard set forth in *Lincoln* to hold that the simple workplace investigation, standing alone, was not clearly established as violative of constitutional rights.

Assuming *arguendo* that *Worrell* articulates the applicable rule instead of *Lincoln*, it does no more than define conduct at a high level of generality.  This is not enough to clearly establish that Givens' and Salcido's specific conduct violated Plaintiff's constitutional rights.  After all, the standard for differentiating a "bad faith" investigation from a "good faith" one has not been addressed in a First Amendment context by the Tenth Circuit or the Supreme Court.[34]  Those three words in the *Worrell* opinion that Plaintiff clings to are insufficient to put any reasonable officer on notice of what specific conduct violates a constitutional right.

In his Reply, Plaintiff attempts to distinguish *Lincoln* by arguing that what makes an investigation violative of clearly established rights is the result of the investigation.  Plaintiff points out that the investigation *Lincoln* did not lead to the plaintiff's eventual termination.  This argument side-steps the actual reasoning in *Lincoln*.  It was not the ensuing result in *Lincoln* that the Tenth

---

[31] *Id.* at 541.

[32] *Id.* (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)).

[33] *Id.*

[34] Or, if they have, Plaintiff fails to cite to those cases.

Circuit focused on, but rather the naturally occurring effects of the type of investigation levied at the plaintiff.   Like the plaintiff in *Lincoln*, Plaintiff was subjected here to a private investigation as opposed to a public trial.  Plaintiff does not show how this investigation *in itself* subjected him to a significant risk of humiliation, damage to reputation, or a concomitant harm to future employment prospects.

Regardless, Plaintiff fails to cite to any on-point Tenth Circuit or Supreme Court case, or the clear weight of other circuits, to support his inferential argument.  Thus, Plaintiff fails to show that his interpretation of the law is clearly established such that Givens and Salcido would have known that initiating an investigation by itself violated Plaintiff's constitutional rights. Furthermore, Plaintiff failed to include this argument in his initial response to Defendants' motion for summary judgment.  Even here, he only raises it in his Reply.  Accordingly, Plaintiff's Motion is denied on this point.

2.      *Investigation as a cause of Plaintiff's termination*

Second, Plaintiff argues that this Court erred by not addressing the investigation in the context of the resulting termination under a proximate cause analysis.  In Plaintiff's view, Givens and Salcido caused Plaintiff's termination by initiating the investigation and, accordingly, they should be denied qualified immunity. Defendants fail to respond to this argument *at all*—a shocking omission, considering that Plaintiff spends nearly half of his Motion briefing this issue.

In its original order, the Court framed this issue under the second prong of the qualified immunity analysis, asking whether it was clearly established that initiating the investigation, which could foreseeably lead to termination, violated Plaintiff's constitutional rights.  After reconsideration of the issue, the Court concludes that this analysis, while correct, was erroneously insufficient.  Of course, the investigation itself did not violate clearly established constitutional

rights. Rather, the only action that could be found to have violated clearly established constitutional rights was Plaintiff's termination. However, the investigation, as argued by Plaintiff, forms the first in the series of events which causally led to Plaintiff's termination. Therefore, the real issue here is the first prong of the qualified immunity analysis—whether Givens and Salcido caused Plaintiff's constitutional rights to be violated by initiating the investigation.[35]

Here, the test is whether the defendants "set in motion a series of events that defendants knew or reasonably should have known would cause others to deprive the plaintiff of his constitutional rights."[36] Given that "§ 1983 creates a species of tort liability," causation is generally evaluated similarly to tort actions.[37] Accordingly, "for an officer to be liable under Section 1983, the officer's conduct must be both a but-for and proximate cause of the plaintiff's constitutional harm."[38] Defendants do not dispute that Plaintiff established that Givens and Salcido initiating the investigation was a but-for cause of his termination.

Regarding proximate cause, the Court noted in its initial order that there is a genuine dispute of material fact as to whether it was reasonably foreseeable that initiating the investigation would lead to Plaintiff's termination. Therefore, the question of whether Givens and Salcido violated Plaintiff's constitutional rights under a proximate cause analysis is one best left to a jury. Accordingly, the Court's original order was in error, and qualified immunity as to Givens and Salcido should be denied.

---

[35] *See Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2007) (listing elements of a First Amendment retaliation claim).

[36] *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1994).

[37] *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 305 (1986).

[38] *Pauly v. White*, 814 F.3d 1060, 1075–76 (10th Cir. 2016), *cert. granted, judgment vacated on other grounds*, 580 U.S. 73 (2017).

**C.     Plaintiff cannot show that the Court's dismissal of Plaintiff's claim against Ramsay was clearly erroneous.**

Plaintiff saves his least persuasive argument for last, claiming that the Court erred by dismissing Ramsay from the case based on qualified immunity.  In reaching this conclusion, the Court relied on Plaintiff's own explicit characterization of his claim against Ramsay as one for supervisor liability.[39]  The Court noted Plaintiff's failure to point to any direct or circumstantial evidence of Ramsay's culpable state of mind as required to recover against a supervisor under § 1983.[40]  Indeed, Plaintiff failed to make *any* argument regarding Ramsay's mental state.  Now, Plaintiff attempts to redress this omission with speculation based loosely on large inferential steps and broad, unsupported statements such as "everyone knew [the investigation] would lead to his termination."  He also tries to reframe his claim against Ramsay as not just supervisor liability but also direct liability.

None of these arguments are proper for the Court to consider on a motion for reconsideration.  Plaintiff had his chance to present his best arguments and clearly lay out his claims against Ramsay when responding to Defendants' motion for summary judgment.  Allowing Plaintiff to assert new arguments—or worse, entirely new claims—that he should have presented

---

[39] Briefly, Plaintiff also mentioned in his original response that Ramsay was liable as a conspirator under § 1983.  However, Plaintiff never asserted a § 1983 conspiracy claim in his Complaint.  Nowhere does he mention the word "conspiracy" nor do his vaguely listed causes of action put Defendant on notice of that alleged claim.  Aside from one-off and conclusory assertions that various Defendants are liable as conspirators, Plaintiff failed to argue substantively for a conspiracy claim in his original responsive brief, thus abandoning that claim even if it existed in the first place. *See, e.g.*, *Benge v. United Parcel Serv., Inc.*, 2022 WL 7484632, at *4–5 (D. Kan. 2022) (summarizing caselaw showing a party abandons a claim by failing to substantively respond to a motion for summary judgment regarding that claim).  Accordingly, the Court properly found this argument irrelevant.  Regardless, Plaintiff does not raise it within the present Motion.

[40] *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (holding that § 1983 supervisor liability requires plaintiff to demonstrate: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.").

then would violate the legal standards for motions to reconsider.  Beyond these improperly raised arguments, Plaintiff fails to offer any suggestion as to how this Court's ruling on the briefings before it was clearly erroneous.  Accordingly, Plaintiff's Motion must be denied as to Ramsay.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reconsideration (Doc. 80) is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

Dated this 4th day of April, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE