UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LANCE OLDRIDGE,

    Plaintiff,

    v.                                                    Case No. 21-1284-EFM-BGS

CITY OF WICHITA, et al.,

    Defendants.

## MEMORANDUM AND ORDER DENYING
## MOTION TO COMPEL

This matter comes before the Court on Plaintiff Lance Oldridge's (hereinafter "Oldridge" or "Plaintiff") amended motion to compel. Doc. 135. Defendants the City of Wichita, Robert Layton, and Anna Hatter (hereinafter "the City" or "Defendants") oppose the motion arguing, in part, that the disputed discovery requests seek irrelevant information on what Plaintiff alleges are similarly situated employees. Doc. 139. For the reasons stated herein, the motion is **DENIED.**

## I.    Background Facts

This case has a long procedural history. The facts have been previously recounted by this court and the Tenth Circuit. *See* Docs. 78, 105. In this Order, the Court will not recite every factual nuance but will instead briefly state the relevant facts necessary to rule on the motion. Plaintiff brings claims for violations of the First and Fourteenth Amendments under 42 U.S.C. § 1983 against all Defendants and claims under Title VII and the Kansas Act Against Discrimination ("KAAD") against the City. Oldridge was a longtime Wichita Police Department ("WPD") detective who was assigned to the Professional Standards Bureau ("PSB") and later the WPD academy. He was employed by the WPD from 1993 to April 2020. Toward the end of his employment with the WPD, a series of disputes arose which led to his termination.

In 2019, the Wichita Eagle published an article which contained statements from Wichita Police Chief Gordon Ramsay during a deposition. The statements made by Chief Ramsay related to questionable police practices such as the PSB asking leading questions and potentially contaminating ongoing criminal investigations. In the article, Chief Ramsay also expressed concern that police officers, potentially including Oldridge, engaged in misconduct during criminal investigations. These concerns included leading questions, conflicts, and biased investigations. The article also reported that Ramsay responded to the concerns by reassigning several officers. While not named directly, those officers impliedly included Oldridge.

After the Wichita Eagle article was published, Ramsay responded with a public statement claiming that the reassigned officers "committed no legal or WPD internal violations." Doc. 32, at 6. *See also* Doc. 78, at 3. Oldridge believed this public statement was evidence of Chief Ramsay violating Kansas law. Ramsay testified in his deposition that certain police officers had committed WPD violations but said effectively the opposite in his public statement. As a result, Oldridge delivered a packet of materials to Sedgwick County District Attorney Marc Bennett. These materials included a copy of Ramsay's deposition testimony, his public statements, copies of Kansas statutes relating to false communications, and a cover letter asserting Ramsay gave false testimony under oath. Oldridge requested that the district attorney investigate Ramsay's alleged criminal conduct and added that he was willing to sign a criminal complaint against Ramsay.

The district attorney responded to Oldridge with an email opining that Ramsay had not committed a crime. According to the district attorney, Ramsay was merely providing his opinions during his deposition testimony and through public statements. Oldridge sent a similar packet to Sedgwick County Sheriff Jeff Easter. He informed the Sheriff that the district attorney had chosen not to investigate Plaintiff's allegations and requested that the Sedgwick County Sherriff's Office investigate Ramsay for alleged perjury. After consulting with the district attorney, the Sheriff

informed Plaintiff that it would not launch an investigation into Ramsay. The Sheriff also informed Ramsay of Plaintiff's allegations.

After learning of Plaintiff's communications with the district attorney and Sheriff's Office, Chief Ramsay contacted his staff about Plaintiff's allegations. WPD Deputy Chiefs Jose Salcido, Anna Hatter, and Wanda Givens met with the district attorney to discuss Plaintiff's allegations. After the meeting, Deputies Salcido and Givens recommended a PSB investigation into Plaintiff based on his statements to the district attorney and to the Sheriff's office. Ramsay authorized the investigation when he received the request. On December 6, 2019, Plaintiff was suspended pending the investigation, which included an unusual requirement that he remain at home during work hours. Plaintiff alleges that others suspended by the City were not subject to such confinement.

On December 9, 2019, Oldridge produced documents to the PSB showing that he informed the Sheriff of his prior conversations with the district attorney. Oldridge filed a complaint against Deputy Givens for retaliation and against Ramsay for providing false testimony.

On March 30, 2020, Deputy Hatter recommended terminating Oldridge. Both the district court and the Tenth Circuit summarized the memorandum. *See* Docs. 78, at 5; 105, at 4-5. The Tenth Circuit stated that Deputy Hatter discussed Plaintiff's statements to the district attorney and to the Sheriff, "but suggested that the basis for termination was centered on his allegedly derogatory and debasing statements about the police chief to his coworkers, his untruthfulness, and his breach of a prior confidentiality agreement." Doc. 105, at 4-5. The City Manager approved Plaintiff's termination on April 19, 2020. Plaintiff filed a grievance and later appealed the decision, but ultimately his termination was upheld.

In addition to the above, Oldridge also alleges he was retaliated against for the actions of his wife, Sarah Oldridge, who was the only female out of 30 Lieutenants with the WPD. Sarah Oldridge raised questions about discrimination within the WPD. In 2018, she sent an email within the WPD

asking about certain promotion procedures and what the WPD did to eliminate bias from an anonymous survey that was used in the promotion process. According to the amended complaint, the email was not well received. Ms. Oldridge filed an EEOC charge of discrimination and a lawsuit of her own against the WPD. While her allegations are not at issue in this lawsuit, Oldridge alleges his wife's actions were a contributing factor in his termination. Specifically, he alleges that the WPD retaliated against him because his wife filed an EEOC charge and lawsuit.

With this backdrop, Plaintiff filed suit in federal court on December 1, 2021, alleging claims under the First and Fourteenth Amendments, Title VII, and the KAAD. Plaintiff, a white male, alleges his "race played a role in [his] suspension, investigation, and termination." Doc. 18, ¶ 95. He also alleges that he was retaliated against for exercising his First Amendment rights because he "would not have been suspended, investigated, or fired, had he not made complaints to law enforcement about Defendant Ramsay." *Id.*, ¶ 93. Further, he claims he "would not have been suspended, investigated, or fired, had Sarah Oldridge not asserted her rights under federal and state law" which amounts to retaliation under Title VII and KAAD. *See id.*, ¶ 94.

This case has been heavily litigated during pre-discovery proceedings. The Defendants filed an early motion for summary judgment which was granted in part and denied in part. *See* Doc. 78. Plaintiff filed a motion for reconsideration of the summary judgment order which was also granted in part and denied in part. *See* Doc. 97. Defendants appealed the district court's denial of qualified immunity. The Tenth Circuit affirmed in part and reversed in part. *See* Doc. 105.

The following claims remain in the lawsuit: (1) First Amendment retaliation claim against the City, Hatter, and Layton; (2) race discrimination claim against the City under Title VII and KAAD; and (3) a Title VII and KAAD retaliation claim arising out of Plaintiff's wife's discrimination complaint and following lawsuit.

A scheduling order was entered on July 30, 2024, and the discovery phase of this litigation

began.  On January 23, 2025, Plaintiff requested a conference with the Court to discuss a pending

discovery dispute.  The discovery dispute centers on a number of discovery requests wherein

Plaintiff seeks information regarding other employees, contending that these individuals are

comparators whose disciplinary records and other personnel related documents (or lack thereof) are

relevant to the underlying litigation.  The Court held a pre-motion conference on February 12, 2025.

Despite guidance from the Court, the parties were unable to resolve their dispute, and Plaintiff filed

his motion to compel.  The motion is now fully briefed, and the Court is prepared to rule.

## II. Legal Standard

Feb. R. Civ. P. 26(b) governs the scope of discovery and states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering the
> importance of the issues at state in the action, the amount in controversy, the parties'
> relative access to relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or expense of the proposed
> discovery outweighs its likely benefit.  Information within this scope of discovery need
> not be admissible in evidence to be discoverable.

To be discoverable, the information sought must be nonprivileged, relevant, and

proportional to the needs of the case.  *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440,

at *2 (D. Kan. Jan. 11, 2018).  Relevance is "construed broadly to encompass any matter that bears

on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in

the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  *See also Smith v. MCI Telecomm.

Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

Pursuant to Fed. R. Civ. P. 37, a party may move the Court for an order compelling answers

to interrogatories and requests for production of documents.  If the discovery sought appears

relevant, the party resisting discovery has the burden to establish the lack of relevancy by

demonstrating that the requested discovery (1) does not come within the scope of relevancy as

defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm

occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011). *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections). Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request. *Id.* Relevancy determinations are generally made on a case-by-case basis. *Id.*

In employment discrimination cases, discovery of information related to similarly situated employees or comparators may be relevant to establish a pattern or practice of unlawful behavior. To establish pretext in a race discrimination claim, a plaintiff may demonstrate that the employer treated them differently than similarly situated employees who were not members of the protected class. *See Boliere v. Robert Brodgen's Olathe Buick-GMC Inc.*, 706 F. Supp. 3d 1275, 1292 (D. Kan. 2023). Determining whether an employee is a comparator is a fact-specific analysis. "A similarly situated employee is one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." *See Byrnes v. St. Catherine Hosp.*, No. 21-2086-DDC-ADM, 2023 WL 2734229, at *11 (D. Kan. Mar. 31, 2023). "Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated." *Id.*

## III.    Analysis

Plaintiff moves to compel Defendants to produce documents pertaining to eight alleged similarly situated employees. He argues that since "alleged dishonesty was one basis for [his] termination," information about other individuals who committed actual dishonest acts but weren't fired—specifically those "who had not criticized Chief Gordon Ramsay and/or were minorities

useful to the WPD's PR or diversity goals" is relevant.  *See* Doc. 135, at 4.

The requested documents relating to the proposed comparators are allegedly in response to ten different requests for production (RFPs 11, 16, 17, 18, 19, 21, 22, 23, 27, and 29).  In both Plaintiff's brief and Defendants' response brief, various arguments are asserted in support of or in opposition to the requested discovery.  Defendants object on the grounds that the discovery requests are irrelevant, overbroad, unduly burdensome, and disproportionate to the needs of the case.  Under these circumstances, it is more efficient for the Court to evaluate the discovery requests within the context of each comparator.  Therefore, for the purposes of this order, the analysis will be organized by comparator rather than by each discovery request.

### a.  Wendell Nicholson

Plaintiff asserts that documents related to Nicholson are responsive to requests for production ("RFP") 11, 19, and 23.  Defendants contend that RFP 29 is the only request at issue.  It is clear from the Court's review that the only request that could potentially relate to Nicholson is RFP 29.[1]  Because Plaintiff argued in the pre-motion discovery conference that information related to Nicholson was responsive to RFP 29, the Court will address that herein even though it is not specifically mentioned in Plaintiff's motion.  RFPs 11, 19, and 23 will not be discussed further since they do not involve Nicholson.

RFP 29 requests the application completed by Nicholson and all versions of that application that exists in the City's records.  Plaintiff states that Nicholson is a police officer who applied for a promotion on February 22, 2018.  During the application process, he was required to certify that he had worked at least one year as a Lieutenant.  He checked the box indicating that he had worked for at least one year as a Lieutenant.  During his deposition, he testified that at the time of the

---

[1]RFP 11 pertains to an automobile accident that has no relation to Nicholson's application for a promotion. RFPs 19 and 23 do not mention Nicholson's name anywhere in the requests.

application, he had not served one year as a Lieutenant. The City explains that Nicholson was under the impression that the question was asking whether he would have one year experience as a Lieutenant at the time of promotion rather than at the time of the application submission. While Plaintiff does not specify in his motion, it appears that Nicholson was not disciplined for the application submission. Plaintiff submits that the situation should be viewed as dishonesty and similar to the facts of this case. The City objects that the request is irrelevant, overbroad, and unduly burdensome.

Here, the Court does not find that the application is relevant to the claims in this lawsuit. Plaintiff argues that Nicholson's and Oldridge's violations are similar because they are related to dishonesty. However, the assertion is conclusory, and Plaintiff provides no support for how Nicholson's application is relevant. *See Sperry*, 2020 WL 5642343, at *3 (stating that the burden to establish relevance is on the requesting party). In this case, the circumstances are entirely different. Oldridge's termination was allegedly centered on his derogatory and debasing statements about the police chief, his untruthfulness, and his breach of a prior confidentiality agreement which was precipitated by his multiple attempts to launch an investigation into the police chief. Nicholson's alleged dishonesty was, from the City's perspective, based on a misunderstanding of the application form. An erroneous application submission, dishonest or otherwise, is not comparable to the conduct in this case. Taking Plaintiff's position to its logical conclusion, any incident with even an iota of dishonesty would be a relevant comparator. The Court must take into account all relevant circumstances when evaluating whether an employee is similarly situated. *Green*, 420 F.3d at 1194. Simply put, Nicholson is not a relevant comparator. Because the Court has found this issue to be determinative, it need not consider the other objections raised by Defendants.

The motion to compel is **denied** as it pertains to Nicholson.

### b. Tim Relph

The discovery requests seeking information about Relph are RFPs 11, 19, and 23.  RFP 11 asks for any and all documentation—including police reports, witness statements, emails, videos, PSB investigation materials, photographs, and disciplinary records—that the Defendant either created or received regarding a September 18, 2021 incident in which a 19-year-old Heartspring student died after being hit by a vehicle.  RFP 19 seeks "all documents related to any investigation" concerning 22 different individuals, including Relph. [2]  RFP 23 seeks "documents related to suspensions, discipline, counseling, warnings, terminations, and/or promotions" for the same 22 individuals.  The City objects that the requests are irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case.

Relph is a white police detective who allegedly ran over a Heartspring student after she was hit by a different vehicle.  According to Plaintiff, Relph gave inconsistent statements about the incident, including allegedly lying to the 911 dispatcher.  The WPD never investigated or disciplined him.  Plaintiff attached as an exhibit a declaration from Kelly Mar, a current WPD employee, and conventionally filed an exhibit containing a recording of the 911 call.  Mar's declaration sets forth a second-hand account of what happened during the incident as well as a description of the 911 call.  The exhibits primarily reiterate what Plaintiff describes in his motion.  Defendants assert that the information regarding the automobile incident has no relevance to the claims in this case.  Nonetheless, Defendants agreed to produce any PSB investigation files relating to Plaintiff's claim that Relph lied to 911 on the day of the accident.  After conducting a search, Defendants confirmed no responsive information exists.

---

[2]These individuals include: Rick Craig, Tammi Doshier, Wanda Givens, Anna Hatter, Kris Henderson, Sandy Hugria, Chris Maines, Bryan Martin, Corey Masterson, Blake Mumma, Richard Mellard, II, Blake Mumma, Mike Nagy, Lance Oldridge, Sarah Oldridge, Carla Patton, Chester Pinkston, Gordon Ramsay, Tim Relph, Brian Safris, Jose Salcido, and Jeremy Vogel.

The Defendants argue that the requests are overbroad stating that "[i]nternal personnel files, PSB investigation documents and general police investigation documents on general WPD employees is an overly broad request . . ." The Court agrees that RFPs 19 and 23 are overbroad on their face. The requests seek "all documents related to any investigation," suspension, discipline, counseling, warning, termination, and/or promotion, for a total of 22 different individuals. The requests are not narrowly tailored, contain no temporal limitation, and make no attempt to limit the investigation files Plaintiff is seeking. *See Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 667-68 (D. Kan. 2004) (nothing that a request is facially overbroad when it seeks documents concerning a broad range of items with no limiting language). "When the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

Here, Plaintiff has not met his burden to show that the requested information is relevant. While RFP 11 is more limited to the incident Plaintiff raises, the Court does not find the incident to be relevant. Plaintiff again attempts to characterize the situation as a WPD violation concerning dishonesty. But in this instance, Defendants agreed to produce all PSB investigation files relating to the claim that Relph lied during the 911 call. There are no such files. The remaining details of the incident have no relation to what occurred in this case, which primarily involved making complaints to law enforcement about Chief Ramsay. As such, Relph is not a relevant comparator. Accordingly, the Court finds that RFPs 19 and 23 are overbroad and that the information sought in RFP 11 is not relevant. The Court need not address the other objections raised by Defendants.

The motion to compel as it pertains to Relph is **denied**.

### c. Carl Lemons

The discovery requests that seek information about Lemons are RFPs 11 and 22. As previously discussed, RFP 11 seeks all documents generated or received by the City in connection to

the Heartspring student being struck with an automobile. RFP 22 seeks documents reflecting any promotions of Lemons between September 1, 2021, and present. The City objects that the requests are irrelevant, overbroad, unduly burdensome and not proportional to the needs of the case.

The only information Plaintiff provides as it relates to Lemons is: "Lemons, who is black and didn't complain about Ramsay, permitted Relph to leave a fatality scene and drive home drunk. Promoted 2 months later." Doc. 135, at 9. Defendants argue that the information sought is not relevant and that "Plaintiff has no evidence that Mr. Lemons did not speak critically of Chief Ramsay or that Mr. Lemons was dishonest and received more favorable treatment than Plaintiff." Doc. 139, at 8. The Court agrees. Plaintiff does not assert that Lemons was dishonest and fails to establish how Lemons' alleged conduct during the automobile incident makes him a comparator. Plaintiff also fails to explain how information related to Lemons' promotion is relevant to the issues in this case. The Court finds that the requested information as it pertains to Lemons is not relevant. The Court need not address the other objections raised by Defendants.

The motion to compel as it pertains to Lemons is **denied**.

### d. Jeremy Vogel

The discovery requests seeking information about Vogel are RFPs 19 and 23, which as the Court has previously discussed, are overbroad on their face. Plaintiff also fails to meet his burden to show that the any of the requested information related to Vogel is relevant.

Vogel is an Asian American who is a former WPD employee. According to Plaintiff, he lied during Oldridge's grievance hearing and testified that he had to counsel and mentor Oldridge. However, during the internal affairs investigation, he allegedly said he did not remember having to coach or mentor Oldridge. Plaintiff provides that Vogel suffered no repercussions over his dishonesty. Plaintiff also mentions that Vogel had sexual harassment complaints before his termination.

Here, Defendants agreed to produce the PSB file of Vogel related to any investigation of him providing testimony in Plaintiff's arbitration hearing that was inconsistent with his PSB interview. The Defendants state that no investigation occurred and, thus, no documents were produced. Plaintiff has not established, or even mentioned, how any other investigation files, disciplinary records, counseling sessions, or promotions are in any way relevant. RFPs 19 and 23 are overbroad for the reasons already discussed and Plaintiff has not established that the information is relevant.

The motion to compel is **denied** as it pertains to Vogel.

### e. Corey Masterson

The parties agree that the RFPs at issue are 19 and 23, which have already been described above. They are overbroad and Plaintiff has otherwise failed to show that the requested information is relevant.

Plaintiff alleges that Masterson is a white WPD police officer who allegedly broke into a Walmart to get something to eat while on a reckoning period for a DUI. Plaintiff alleges he was not terminated for this incident. Plaintiff makes no attempt to argue how Masterson's alleged conduct has any similarity to how Oldridge was terminated. The Court also notes that Plaintiff repeatedly states that the proposed comparators, to include Masterson, did not criticize Chief Ramsay. However, that alone is wholly insufficient to establish that someone is a comparator. Masterson's alleged conduct is unrelated to Plaintiff's conduct. Again, Plaintiff fails to meet his burden that the discovery requests are relevant as it pertains to Masterson.

The motion to compel is **denied** as it pertains to Masterson.

### f. Bret Huhman

The RFPs at issue are 16, 17, and 18. RFP 16 requests all documents generated or received by the City at any time in connection with the investigation of Huhman punching a citizen in the

chest in 2020.  RFP 17 seeks all discipline issued to Huhman in 2020, 2021, and/or 2022.  RFP 18 seeks records of Huhman being promoted in 2020, 2021, and/or 2022.  The City asserts objections that the requests are irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case.

Plaintiff's motion states Huhman "is a white WPD officer who did not accuse Ramsay of a crime.  He physically battered his neighbor in 2020.  He has been promoted since."  Doc. 135, at 10.  Similar to Lemons, Plaintiff fails to set forth any information explaining why he considers Huhman a comparator and how the requested information bears any relevance to the case.

RFPs 17 and 18 are overbroad and irrelevant.  Requesting any and all records relating to Huhman for a three-year span is not appropriate.  *See Audiotext Comm'ns v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 18759, at *1 (D. Kan. Jan. 17, 1995) (sustaining overbreadth objections because the requests in dispute were not "reasonably specific").  Discovery requests should not "function like a giant broom, sweeping everything in their path."  *Id.*  Moreover, all instances of discipline Huhman may have received over a three-year span is not relevant.  Plaintiff makes no argument in support of how these requests are tailored to obtain relevant information nor does Plaintiff establish how Huhman is similarly situated to Oldridge.

RFP 16 requests documents pertaining to an incident in which he allegedly punched an individual in the chest.  Again, Plaintiff fails to support his position that this is relevant information.  The circumstances of alleged assault bear no semblance to Plaintiff's conduct in this case.  Because the Court finds that the requests are overbroad and irrelevant, it need not address the other issues raised.

The motion to compel is **denied** as it pertains to Huhman.

### g.  Sandy Hungria

Plaintiff alleges information related to Hungria is responsive to RFP 27 which requests "[a]ll

documents reflecting Captain Hungria's disclosure of PSB materials to sergeants who had no need to know about the subject of those PSB investigations." Doc. 135-1, at 13. Defendants did not object to this request and state in their response "[p]ursuant to Defendants' response to RFP 27, documents responsive to Hungria will be produced as it relates to the disclosure of PSB materials." Doc. 139, at 8.

The Court is unclear whether the documents have been produced or whether there is a dispute as to RFP 27. Based on Defendants' response, the Court assumes no dispute exists; however, to the extent any responsive information has not been produced, the City is directed to produce such documents responsive to RFP 27 by **May 7, 2025**.

Given that there is no objection to RFP 27, the Court makes no ruling as to the request and instead directs the Defendants to complete their production as set forth above.

### h. Bryan Martin

The discovery requests that seek information about Martin are RFPs 19, 21, and 23. As previously stated, RFPs 19 and 23 are facially overbroad, which places the burden on Plaintiff to establish relevancy for the requests. RFP 21 seeks documents related to discipline issued to Martin and any reduction to that discipline. The City objects to the discovery requests stating that they seek irrelevant information, are overly broad, unduly burdensome, and not proportional to the needs of the case.

Here, Plaintiff's motion provides that Martin "is a black WPD officer who did not accuse Ramsay of a crime. He beat up a suspect and was not fired over it." Doc. 135, at 10. No further description or argument is provided. An alleged assault and battery on a suspect is not comparable to the facts in this case and Plaintiff makes no attempt to connect the dots. Plaintiff has failed to establish that the requested information is relevant.

The motion to compel is **denied** as it pertains to Martin.[3]

## IV.    Conclusion

After considering the briefs and the attached exhibits, the Court **DENIES** Oldridge's motion to compel for the reasons stated above.  However, pursuant to the Defendants' agreement to produce documents responsive to RFP 27, Defendants are directed to produce responsive documents as set forth above.

**IT IS THEREFORE ORDERED** that Plaintiff's amended motion to compel, Doc. 135, is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants produce responsive documents to RFP 27 by **May 7, 2025**.

**IT IS SO ORDERED.**

Dated April 24, 2025, at Wichita, Kansas.

/s/ BROOKS SEVERSON
Brooks G. Severson
United States Magistrate Judge

---

[3] In Defendants' response brief, they also address RFPs 1 and 10.  The Plaintiff does not appear to address those RFPs anywhere in his motion.  Therefore, the Court does not need to address these discovery requests in any further detail.  To the extent any dispute exists, the arguments have been considered within the context of Plaintiff's proposed comparators.